IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE ALIERA COMPANIES, INC | ) | Case No. 21-11548 (TMH) |
| d/b/a ALIERA HEALTHCARE, INC., *et al.,* | ) | |
| | ) | Pending in the U.S. Bankruptcy |
| | ) | Court for the District of Delaware |
| Debtors. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| ALIERA LT, LLC, as Liquidating Trustee of | ) | |
| The Aliera Companies, Inc., *et al.,* | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 23-05204 |
| v. | ) | |
| | ) | |
| JOHN BLENKE, THEODORE STRICKLAND, | ) | |
| ROGER SEVIGNY, and JAMES WESTON | ) | |
| QUINTRELL, | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| | ) | |
| JOHN BLENKE, THEODORE STRICKLAND | ) | |
| and ROGER SEVIGNY, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | Adversary Proceeding No. 23-05204 |
| | ) | |
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**THIRD-PARTY PLAINTIFFS' FIRST AMENDED THIRD-PARTY COMPLAINT AT
LAW FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT AGAINST
THIRD-PARTY DEFENDANT SCOTTSDALE INSURANCE COMPANY**

NOW COME Third-Party Plaintiffs JOHN BLENKE, THEODORE STRICKLAND, and

ROGER SEVIGNY (collectively, "**Third-Party Plaintiffs**") and for their First Amended

Declaratory Judgment action against Third-Party Defendant Scottsdale Insurance Company

("**Third-Party Defendant**" or "**Scottsdale**"), state as follows:

## NATURE OF THE CASE

1.      This is an action for declaratory relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, wherein Third-Party Plaintiffs seek a declaration regarding Scottsdale Insurance Company's duties and obligations to indemnify and defend Third-Party Plaintiffs—independent contractors and members of an advisory board—under a "Business and Management Indemnity Policy" (also referred to as the "**Policy**") with its "Directors and Officers and Company Coverage Section," issued by Scottsdale and under which they are "Insureds" associated with the parent company, The Aliera Companies, Inc. ("**Debtor**") as defined in the Policy.

## THE PARTIES

2.      In or about August 2019, Third-Party Plaintiffs John Blenke, Theodore Strickland, and Roger Sevigny became independent contractors, consultants, and Advisory Board members of Debtor pursuant to written advisory agreements.

3.      Aliera Healthcare, Inc. was a business emanating from Debtor, a Delaware corporation.

4.      Aliera LT, LLC, as the liquidating trustee for Debtor, brought the above referenced Adversary Proceeding in this Court and this action is a direct result of such Adversary Proceeding.

5.      Upon information and belief, Third-Party Defendant Scottsdale is a mutual insurance company organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio. Upon information and belief, Scottsdale is authorized to sell, write, and issue policies of insurance in the State of Georgia and, at all material times, has conducted and continues to conduct substantial insurance business in the State of Georgia, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in Georgia.

2

6.      Scottsdale is a citizen of Ohio, with a home office in Columbus, Ohio, and an administrative office in Scottsdale, Arizona.

## JURISDICTION AND VENUE

1.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334, and pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities, if any, of the parties under the Policy, and to give such other and further relief as may be necessary to enforce the same because an actual justiciable controversy exists between and among the parties that can be determined by an order of this Court.

2.      Venue is proper in this District, pursuant to § 1391(b)(2), because a substantial part of the events giving rise Third-Party Plaintiffs' disputed claim for coverage under the Business and Management Indemnity Policy occurred in this District.

## FACTUAL BACKGROUND OF SUBJECT CLAIM

3.      On April 21, 2021, Scottsdale issued to Debtor, as a Named Insured, a "Business and Management Indemnity Policy," bearing Policy No. EKS3376033, effective from 4/21/19 and extended from April 21, 2021, to April 21, 2022.

4.      The Policy provided, among other coverage, an Employment Practices Coverage Section, a Directors and Officers and Company Coverage Section, a Fiduciary Coverage Section and Endorsements. A true and accurate copy of the Business and Management Indemnity Policy is attached hereto as **Exhibit 1**.

## THE BUSINESSS MANAGEMENT INDEMNITY POLICY

5.      The Scottsdale Policy was registered and delivered as surplus line coverage

under the Georgia Insurance Code,

6.      The Business and Management Indemnity Policy reads, in relevant part:

## GENERAL TERMS AND CONDITIONS

*** 

### B. DEFINITIONS

> Whenever used in this **Policy**, the terms that appear below in
> **boldface** type shall have the meanings set forth in this Definitions
> subsection of the General Terms and Conditions. However, if a term
> also appears in **boldface** type in a particular Coverage Section and
> is defined in that Coverage Section, that definition shall apply for
> purposes of that particular Coverage Section. Terms that appear in
> **boldface** in the General Terms and Conditions but are not defined
> in this Definitions subsection and are defined in other Coverage
> Sections of the Policy shall have the meanings ascribed to them in
> those Coverage Sections.

> *** 

> 2. **Company** means:

>> a.  the **Parent Company**; and

>> b.  any **Subsidiary**,

> and includes any such organization as a debtor-in-possession or
> the bankruptcy estate of such entity under United States
> bankruptcy law or an equivalent status under the law of any other
> jurisdiction.
> *** 
> 7. **Parent Company** means the entity first named in Item 1 of
> the Declarations.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 7, at "General Terms and

Conditions," attached hereto).

7.      Item 1 of the Policy Declarations provides the **Parent Company** is "The Aliera

Companies, Inc." and Endorsement No. 3 further provided that Advevo, LLC; USA Benefits &

Administrators, LLC; Tactic Edge Solutions, LLC; and Ensurian Agency, LLC also comprised

the Parent Company (*See* Exhibit 1, Business and Management Indemnity Policy, p. 1, at

"Policy Declarations," and p. 37, attached hereto).

     8.     The Scottsdale Policy further reads, in relevant part:

**BUSINESS AND MANAGEMENT INDEMNITY POLICY
DIRECTORS AND OFFICERS AND COMPANY
COVERAGE SECTION**
***

    B. **DEFINITIONS**

      4. **Directors and Officers** means any person who was, now is, or shall become:

        a. a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**;

        b. a person who was, is or shall become a full-time or part-time employee of the **Company**; and

        c. the functional equivalent of directors or officers of a **Company** incorporated or domiciled outside the United States of America.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 21, attached hereto).

     9.     Endorsement No. 22 provides an additional subsection, d, stating:

        any natural person who is a leased employee or contracted to perform work for the **Company**" and "independent contractor[s] . . . but only to the extent such individual performs work or services for or on behalf of the **Company**."

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 56, attached hereto).

     10.     Endorsement No. 48, provides an additional subsection, regarding Advisory

Board members, subsection e, stating:

5

**Directors and/or Officers** means any person who was, now is, or shall become:

a natural person member of the Scientific or Advisory Board of the **Company** (collectively "**Advisory Board Members**") that is indemnified by the Company pursuant to a written indemnification agreement. The Company agrees to indemnify the **Advisory Board Members** to the fullest extent permitted by law, taking all steps necessary or advisable in furtherance thereof, including the making in good faith of any application for court approval, the passing of any resolution by the board of directors or shareholders of the **Company**, the amendment of any charter, bylaws, operating agreement or similar documents of the **Company** or the execution of any contract. The **Company** further agrees to advance **Costs, Charges and Expenses** actually and reasonably incurred by any **Advisory Board Member** in defending any threatened, pending or contemplated action, suit or proceeding prior to a final disposition of any such action, suit or proceeding and shall not require any determination or adjudication, interim or final, of the entitlement of the **Advisory Board Member** to indemnification, where permitted by law to do so. The financial ability of any **Advisory Board Member** to make repayment shall not be a prerequisite to the making of such an advance, and the right to receive advancement of **Costs, Charges and Expenses** herein is a contractual right. The agreements contained in this paragraph are binding upon the **Company** and enforceable by the **Insurer** or the **Advisory Board Member**.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 86, attached hereto).

11.    Pursuant to Endorsement No. 48, the Company had intentionally agreed under the Business and Management Indemnity Policy to "indemnify the **Advisory Board Members** to the fullest extent permitted by law . . . " (*See* Exhibit 1, Business and Management Indemnity Policy, p. 86, attached hereto).

12.    The Scottsdale Policy's Directors and Officers and Company Coverage Section (B), regarding definitions, further reads, in relevant part:

5. **Insured** means the **Company** and the **Directors and Officers**.

\*\*\*

8. **Outside Entity** means:

> a. any non-profit company which is exempt from taxation under the Internal Revenue Code, as amended, in which any of the **Directors and Officers** is a director, officer, trustee, governor, executive director or similar position of such non-profit company; and

> b. any other company specifically identified by endorsement to this **Policy**.

9. **Wrongful Act** means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by:

> a. any of the **Directors and Officers**, while acting in their capacity as such, or any matter claimed against any **Director and Officer** solely by reason of his or her serving in such capacity;

> b. any of the **Directors and Officers**, while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**; and

> c. the Company, but only with respect to Insuring Clause 3. of this Coverage Section.

(*See* Exhibit 1, Business and Management Indemnity Policy, pp. 21-22, attached hereto).

13.     The Scottsdale Policy's Directors and Officers and Company Coverage Section

(A), regarding coverage, reads, in relevant part:

A. **INSURING CLAUSES**

> 1. The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the Company and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if

elected, the **Extended Period**, and reported to the Insurer pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

2. The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

3. The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if applicable, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 20, attached hereto).

14.    The Scottsdale Policy's Directors and Officers and Company Coverage Section

(C) regarding exclusions, in relevant part:

C. **EXCLUSIONS**

1.  Exclusions Applicable to All Insuring Clauses

**Insurer** shall not be liable for **Loss** under this **Coverage Section** on account of any **Claim**:

*** 

b. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

i. any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

8

    ii. any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** which has been the subject of such prior notice, would constitute **Interrelated Wrongful Acts**;

e. brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive, unless such Claim:

    i. is brought derivatively by a securities holder of **the Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**;

    ii. is brought or maintained by any **Insured** in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a **Claim** that is covered by this Coverage Section;

    iii. is brought or maintained by an employee of the **Company** who is not or was not a director or officer of the **Company**;

    iv. is brought or maintained by any former director or officer of the **Company** solely in their capacity as a securities holder of the **Company** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director or officer ceased to be a director or officer of the **Company** and where such **Claim** is first made two (2) years subsequent to the date such director or officer ceased to be a director or officer of the Company; or

    v. is brought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the **Company**;

f. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    i. any dishonest, deliberately fraudulent or criminal act of an Insured; provided, however this exclusion f.i. shall not apply

unless and until there is a final judgment against such **Insured** as to such conduct; or

ii. the gaining of any profit, remuneration or financial advantage to which any **Directors and Officers** were not legally entitled; provided, however this exclusion f.ii. shall not apply unless and until there is a final judgment against such **Directors and Officers** as to such conduct.

When f.i. or ii. apply, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges or Expenses**;

g. for the return by any of the **Directors and Officers** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company** or **Outside Entity**, which payment without such previous approval shall be held to be in violation of law;

h. against any of the **Directors and Officers** of any **Subsidiary** or against any **Subsidiary** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed or attempted by a **Subsidiary** or **Directors and Officers** thereof:

> i. before the date such entity became a **Subsidiary** or after the date such entity ceased to be a **Subsidiary**; or

> ii. occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring before the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

i. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed subsequent to a **Takeover**;

j. for a **Wrongful Act** actually or allegedly committed or attempted by any of the **Directors and Officers** in his or her capacity as a director, officer, trustee, manager, member of the board of managers or equivalent executive of a limited liability company or employee of, or independent contractor for or in any other capacity or position with any entity other than the Company; provided, however, that this exclusion

shall not apply to Loss resulting from any such Claim to the extent that:

> i. such **Claim** is based on the service of any of the **Directors and Officers** as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**; and

> ii. such **Outside Entity** is not permitted or required by law to provide indemnification to such **Directors and Officers**; and

> iii. such **Loss** is not covered by insurance provided by any of the **Outside Entity's** insurer(s);

k. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

> i. any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry filed or pending on or before the **Continuity Date**; or

> ii. any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry;

l. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act**, fact, circumstance or situation which any of the Insureds had knowledge of prior to the **Continuity Date** where such **Insureds** had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**;

m. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters brought by or on behalf of or on the right of an applicant for employment with the **Company**, or any of the **Directors and Officers**, including any voluntary, seasonal,

temporary, leased or independently contracted employee of the **Company**;

n. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

> i. any initial public offering of securities undertaken and consummated by the **Company**, including all activities in connection therewith;

> ii. the actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any rules or regulations of the Securities Exchange Commission adopted thereunder, any federal, state or provincial statute or common law regulating securities similar to the foregoing, including any amendments thereto, any rules or regulations adopted pursuant thereto in connection with any **Wrongful Act** actually or allegedly committed subsequent to the consummation of an initial public offering of securities of the **Company**; or

***

o. for that portion of Loss which is covered under any other Coverage Section of this **Policy**.

2. Exclusions Applicable Only to Insuring Clause A.3.

**Insurer** shall not be liable for **Loss** on account of any **Claim**:

> a. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; except and to the extent the **Company** would have been liable in the absence of such contract or agreement; or

> b. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

> > i. any actual or alleged infringement, misappropriation, or violation of copyright,

12

patent, service marks, trademarks, trade secrets, title or other proprietary or licensing rights or intellectual property of any products, technologies or services; or

ii. any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, advertised or developed by the Company.

Provided, however, the exclusions in 2.a. and 2.b. above shall not apply to any such Claim brought or maintained, directly or indirectly, by one or more securities holders of the Company in their capacity as such.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insureds** for the purpose of determining the applicability of any of the above exclusions.

(*See* Exhibit 1, Business and Management Indemnity Policy, pp. 22-25, attached hereto).

15.     Endorsement No. 26, added the following to the Exclusions of Insured, stating:

 "**Insurer** shall not be liable for Loss under this Coverage Section on account of any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the bankruptcy or insolvency of the **Company**, including but not limited to:

i. any such claim brought by any creditors, banks, lending institutions or bankruptcy trustee; or

ii. any securities holder, direct or derivative suits and/or representative class action suits.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 60, attached hereto).

16.     Endorsement No. 26 is unenforceable insofar as it is conditioned on insolvency or bankruptcy of the Company (Debtor) and the commencement of a case in bankruptcy or insolvency.

13

17.     Endorsement No. 29 added the following to the Exclusions of
Insured, stating:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim** brought, or maintained by, on behalf of, in the right of, at the direction of, at the behest of, or for the benefit of any:
>
> i. person;
>
> ii. partnership or any of its partners, directors, officers, or employees;                                          or
>
> iii. corporation, or any of its directors, officers or employees who is a secured or unsecured creditor of the Company.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 63, attached hereto).

18.     Endorsement No. 43, provided:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**: alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:
>
> 1. any **Wrongful Act** actually or allegedly committed prior to 4/21/2020, or
>
> 2. any **Wrongful Act** occurring on or subsequent to 4/21/2020 which, together with a **Wrongful Act** occurring prior to such date, would constitute **Interrelated Wrongful Acts**

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 81, attached hereto).

19.     Endorsement No. 39 added Claims related to Trinity Healthshare to the Exclusions
of Insured, stating:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim** brought or maintained by, on behalf of, in the right of, or at the direction of Trinity Healthshare, its directors, officers, employees, subsidiaries, affiliates, or shareholders thereof.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 77, attached hereto).

20.     Consequential to Endorsement No. 48, Scottsdale contemplated "Advisory Board Members" to be different than "directors or shareholders of the Company." (*See* Exhibit 1, Business and Management Indemnity Policy, p. 86, attached hereto).

21.     Scottsdale did not include The Aliera Companies, Inc. Advisory Board, nor its members, among the entities excluded under the Policy, nor did Scottsdale include Aliera Healthcare, Inc.'s Advisory Board and its members as excluded within any Endorsement further excluding under the Policy.

22.     Third-Party Plaintiffs had a property interest in the proceeds of the insurance policy, which was neither excluded under the terms of the Policy or its Endorsements and was neither forfeited nor terminated by Third-Party Plaintiffs.

23.     Scottsdale bore a duty under the Policy to defend and indemnify Third-Party Plaintiffs.

24.     Policy's Directors and Officers and Company Coverage Section further reads, in relevant part:

> F. **SETTLEMENT AND DEFENSE**
>
> 1. It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any Claim shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses**.

(*See* Exhibit 1, Business and Management Indemnity Policy, p. 33, attached hereto).

25.     Third-Party Plaintiffs, as independent contractors, consultants, or advisory board members, did not commit any Wrongful Acts and denied any such wrongful acts in the underlying Adversary Action.

26.     The Policy, pursuant to the Business and Management Indemnity Policy Directors and Officers and Company Coverage Section (C)(2), thus, prohibits a Wrongful Act of one or more Insureds (including all entities related to The Aliera Companies, Inc.) from being imputed to Third-Party Plaintiffs with regard to determining the applicability of any exclusions under Section (C).

## THE SUBJECT CLAIM

27.     On December 20, 2023, The Aliera Companies, Inc., Adevevo LLC, Ensurian Agency LLC, Tactic Edge Solutions, and USA Benefit & Administrators, as Debtors, and Plaintiff Aliera Lt, LLC as Liquidating Trustee of The Aliera Companies, Inc. and Debtors in Case No. 21-11548, filed an action in the U.S. Bankruptcy Court for the Northern District of Georgia. A true and accurate copy of *Aliera Lt, LLC et. al., v. John Blenke, et al.*, Case No. 21-11548, attached hereto as **Exhibit 2**.

28.     In its Complaint, the Trustee alleged, "[t]he Third-Party Defendants each served as directors of Debtor The Aliera Companies, Inc. . . . which was associated with a failed healthcare sharing ministry ('HCSM') scheme," that "[t]hrough their service as directors, the Third-Party Defendants assisted the Debtors in perpetuating the scheme, and harming the Debtors' creditors," that Third-Party Defendants served as "Class B directors," and that "each joined Aliera's board of directors in 2019 as a part of a change in Aliera's corporate governance structure." (*See* Exhibit 2, Case No. 23-05204, at ¶¶ 1-2, 70, 99, 125).

## THIRD-PARTY PLAINTIFFS' TENDER OF THE SUBJECT CLAIM LAWSUIT TO SCOTTSDALE AND SCOTTSDALE'S DENIAL OF THE SAME

29.     On January 19, 2024, Plaintiff, Roger Sevigny, provided Scottsdale with notice of the subject claim, *Aliera Lt, LLC et. al., v. John Blenke, et al.*, Case No. 23-05204. A true and accurate copy of Sevigny's January 19, 24 correspondence is attached hereto as **Exhibit 3**.

30.     On February 2, 2024, Scottsdale acknowledged receipt and denied coverage for the lawsuit, under the Policy with respect to Messrs., Blenke, Sevigny and Strickland, deferring to the Complaint's characterization of directorship, and denying coverage based on Endorsement No. 43, the Prior and Interrelated Wrongful Acts Exclusion; Endorsement No. 26, the Bankruptcy Insolvency Exclusions; and Endorsement No. 29, the Creditor Exclusion. A true and accurate copy of Scottsdale's February 2, 2024 letter is attached hereto as **Exhibit 4**.

31.     Scottsdale further reserved the right to deny coverage based on the Policy's Directors and Officers and Company Coverage Sections (B)(7), (C)(1), (C)(1)(f), (C)(1)(k), (C)(1)(l) and Endorsements 2, 34, 39, 45 of the Directors and Officers Coverage Section.

32.     On February 12, 2024, Plaintiff Blenke notified Scottsdale of its duties to defend and indemnify Messrs. Blenke, Sevigny, and Strickland because the Subject Claim lawsuit should be covered by the Policy and that the principal exclusions relied upon by Scottsdale were without basis in law or fact. A true and accurate copy of Blenke's February 12, 2024 letter is attached hereto as **Exhibit 5**.

33.     On March 14, 2024, Scottsdale responded to Blenke's February 12, 2024 letter.  A true and accurate copy of the Scottsdale March 14, 2024 letter is attached hereto as **Exhibit 6**.

## COUNT I

### DECLARATORY JUDGMENT – BLENKE, STRICKLAND, and SEVIGNY V. SCOTTSDALE – THE SUBJECT CLAIM LAWSUIT FALLS WITHIN THE POLICY'S DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

34.     Third-Party Plaintiffs repeats and re-alleges paragraphs 1-33, as though fully set forth herein.

35.     Coverage exists under both the Policy and applicable law because Third-Party Plaintiffs, as independent contractors, consultants or members of the advisory board, were not excluded from coverage because they fall under the Policy's definition of "Directors and Officers". Although the Third-Party Plaintiffs were not members of the "board of directors," nor are they "shareholders" under the Policy and are, thus, not "directors" as alleged in the subject claim lawsuit, the Policy does specifically require that Scottsdale defend the Third-Party Plaintiffs even if "…any of the allegations are groundless, false or fraudulent".

36.     None of Scottsdale's cited exclusions apply so as to bar coverage for the subject claim under the Directors and Officers and Company Coverage Section.

37.     Scottsdale's attempt to limit coverage of the subject claim would render that Policy's Directors and Officers and Company Coverage Section illusory.

38.     Alternatively, to the extent that any of the terms, conditions, or exclusions of the Directors and Officers and Company Coverage Section are ambiguous, those terms, conditions, and exclusions must be construed against Scottsdale and in Third-Party Plaintiffs' favor.

39.     Alternatively also, even if at a minimum, the subject claim lawsuit against Third-Party Plaintiffs was arguably or partially covered, Scottsdale would bear legal obligations to indemnify and defend Third-Party Plaintiffs.

40.     Scottsdale disputes that it has a legal obligation under the Policy's Directors and Officers and Company Coverage Section to indemnify Third-Party Plaintiffs for any loss that may result from the subject claim lawsuit, and based on that position Scottsdale has refused to honor its duty to defend obligation under the Policy.

41.    Pursuant to 28 U.S.C. § 2201, Third-Party Plaintiffs are entitled to a declaration by the Court of Scottsdale's obligations under the Directors and Officers and Company Coverage Section.

42.    An actionable and justiciable controversy exists between Third-Party Plaintiffs and Scottsdale concerning the proper construction of the Directors and Officers and Company Coverage Section, and the rights and obligations of the parties therein, with respect to the subject claim lawsuit.

43.    Third-Party Plaintiffs are entitled to a declaration that there is coverage available to it for the subject claim lawsuit under the Directors and Officers and Company Coverage Section, that Scottsdale has a duty to defend the Third-Party Plaintiffs and pursuant to 28 U.S.C. § 2202, any other relief that this Court deems proper.

WHEREFORE, Third-Party Plaintiffs JOHN BLENKE, THEODORE STRICKLAND, and ROGER SEVIGNY, respectfully pray that this Honorable Court

(a) find in their favor and against Third-Party Defendant SCOTTSDALE INSURANCE COMPANY and declare that the subject claim is covered under the Directors and Officers and Company Coverage Section of the Business and Management Indemnity Policy issued to The Aliera Companies, Inc.;

(b) find in their favor and against Third-Party Defendant SCOTTSDALE INSURANCE COMPANY and declare that SCOTTSDALE INSURANCE COMPANY has the duty to defend the Third-Party Plaintiffs with respect to the subject claim under the Directors and Officers and Company Coverage Section of the Business and Management Indemnity Policy issued to The Aliera Companies, Inc.;

(c) Third-Party Plaintiffs further pray for any and all other relief deemed necessary, just, and appropriate under the circumstances.

**COUNT II**
**BREACH OF CONTRACT – BLENKE, STRICKLAND, and SEVIGNY V.**
**SCOTTSDALE – THE SUBJECT CLAIM LAWSUIT FALLS WITHIN THE POLICY'S**
**DIRECTORS AND OFFICERS AND COMPANY COVERAGE**

44.     Third-Party Plaintiffs repeats and re-alleges paragraphs 1-43 as though fully set forth herein.

45.     The Business and Management Indemnity Policy is a valid and binding contract between The Aliera Companies, Inc. and Scottsdale, and Scottsdale has wrongly asserted that the Policy does not cover the subject claim lawsuit.

46.     The terms of the Business and Management Indemnity Policy provide that it is the duty of Scottsdale to indemnify and defend Third-Party Plaintiffs in the subject claim lawsuit.

47.     The subject claim lawsuit fits within the terms of the Business and Management Indemnity Policy Directors and Officers and Company Coverage Section.

48.     None of Scottsdale's cited exclusions apply so as to bar coverage for the subject claim lawsuit under the Computer Systems Fraud Coverage.

49.     Scottsdale's attempts to limit its Directors and Officers and Company Coverage Section cannot bar coverage for the subject claim lawsuit via the exclusions, and if such were the case, the Directors and Officers and Company Coverage of the Policy would be rendered illusory.

50.     The allegations of the subject claim lawsuit cannot be imputed to Third-Party Plaintiffs for the purpose of applying the Policy's Directors and Officers and Company Coverage exclusions.

20

51.     Alternatively, to the extent that any of the terms, conditions, or exclusions of the Business and Management Indemnity Policy, including the Directors and Officers and Company Coverage therein, are ambiguous, those terms, conditions, and exclusions must be construed against Scottsdale and in Third-Party Plaintiffs' favor.

51.     Third-Party Plaintiffs are third-party beneficiaries to the insurance policy at issue and have fully performed their obligations under the Policy, including all conditions precedent.

52.     Scottsdale has breached the Policy by refusing to indemnify and comply with its duty to defend the  Third-Party Plaintiffs for the subject claim lawsuit.

53.     As a result of Scottsdale's breach of the Policy, Third-Party Plaintiffs have suffered monetary damages and will continue to do so.

WHEREFORE, Third-Party Plaintiffs JOHN BLENKE, THEODORE STRICKLAND, and ROGER SEVIGNY, respectfully request that the Court

(a) find in their favor and against Third-Party Defendant SCOTTSDALE INSURANCE COMPANY and declare that Third-Party Defendant Scottsdale Insurance Company has breached the terms of the Business and Management Indemnity Policy issued to The Aliera Companies, Inc. and further declare that Scottsdale Insurance Company must pay Third-Party Plaintiffs for all damages arising from Scottsdale Insurance Company's breach of the terms and conditions of the Business and Management Indemnity Policy;

(b) Third-Party Plaintiffs further pray for any and all other relief deemed necessary, just, and appropriate under the circumstances.

Respectfully submitted, this 22nd day of March 2024.

PETERSON, JOHNSON & MURRAY, LLC

*/s/ Dominick L. Lanzito*
Dominick L. Lanzito
200 W. Adams St., Suite 2125
Chicago, Illinois 60606
T: (312) 724-8035
dlanzito@pjmlaw.com
Attorneys for John Blenke, Theodore Strickland
and Roger Sevigny
*Admitted Pro Hac Vice*

ROUNTREE LEITMAN KLEIN & GEER, LLC

*/s/ William A. Rountree*
William A. Rountree, Georgia Bar No. 616503
Ceci Christy, Georgia Bar No. 370092
Century Plaza I
2987 Clairmont Rd., Suite 350
Atlanta, Georgia 30329
T: (404) 584-1244
wrountree@rlkglaw.com
cchristy@rlkglaw.com
Attorneys for John Blenke, Theodore Strickland
and Roger Sevigny
***Local Counsel***