EXHIBIT 5

**John Blenke**
**1 Country Aire Drive**
**St. Louis, MO 63131**
jwb8155@icloud.com

February 12, 2024

Darius N. Kandawalla
Bailey Cavalieri LLC
10 West Broad Street
Suite 2100
Columbus, Ohio 43215-3422
(via email and mail)
Email: dkandawalla@baileycav.com

|        |                  |                                                                                                                                                                                                    |
|--------|------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Re:    | Insurer:         | Scottsdale Insurance Company                                                                                                                                                                       |
|        | Parent Company:  | The Aliera Companies, Inc. (see also Endorsement No. 3 to the Policy which expands the definition of Parent Company to include all entities alleged to be Aliera Healthcare, Inc. under the Lawsuit) |
|        | Company:         | Parent Company, any Subsidiary and any such organization as a debtor-in-possession <u>or the bankruptcy estate of such entity under the United States bankruptcy law</u> or an equivalent status under the law of any other jurisdiction. |
|        | Claimant:        | The Aliera Companies, Inc. (through its Liquidating Trustee) (i.e., the Bankruptcy Estate of the Parent Company)                                                                                   |
|        | Insured:         | Company and the Directors and Officers                                                                                                                                                             |
|        | Policy Number:   | EKS3376033                                                                                                                                                                                         |
|        | Lawsuit:         | In re: *The Aliera Companies, Inc., d/b/a Aliera Healthcare, Inc., et al.,* **Debtors**. *Aliera LT, LLC,* as Liquidating Trustee of The Aliera Companies, Inc., et al., **Plaintiff**, v. *John Blenke, Theodore Strickland, Roger Sevigny, and James Weston Quintrell*, **Defendants**. |

Dear Mr. Kandawalla:

I am receipt of your letter dated February 2, 2024, where you have advised that it is the position of your firm and the Insurer that "no coverage is available under the Policy with respect to the Lawsuit." Please be on notice that the Insureds absolutely disagree with this position. In fact, I

personally was surprised with your conclusion and was amazed by the lack of investigation and the analysis that you and the Insurer described to reach the incorrect conclusion.

It is interesting that you state, if the Insureds think your letter is incorrect, they are "invited" to submit any additional materials or information that they believe may support a contrary conclusion. Of course, you are aware that additional documentation, information, and facts were already offered to the Insurer on or about January 31, 2024, by Mr. Strickland, an Insured. The Insurer, through an email from Mr. Emil Soskin, Esq., states that this was not necessary since "(w)e have what we need to make a determination and a coverage letter will be issued shortly".

This blatant refusal to accept additional information to assist in determining a coverage position is clear evidence that you, or the Insurer, wanted to make an initial coverage determination not based on any knowledge of the true facts, but simply based on the sole intent of crafting some type of decision that you and the Insurer wanted. That decision being the categorical denial of any coverage. It is without a doubt that this action was intended to force the Insureds to incur expense, as well experience emotional distress and other damages, by being required to undertake the duties and obligations of the Insurer.

What was also surprising about your letter is that you state that "(T)he Policy is a claims-made-and-reported policy…". Nowhere do you consider, recognize, or even discuss that the Policy has a 'duty to defend' obligation for the benefit of the Directors and Officers of the Company. As you are undoubtedly aware, a duty to defend has very different requirements then simply considering whether there are 'potential' defenses to coverage.

On the subject of the 'duty to defend', I assume you would agree that the Policy is governed by Georgia law (see Item 1. of the Declarations Page). Under Georgia law when a policy has a duty to defend obligation, the **insurer is expected to defend any lawsuit** brought against the insured that alleges and seeks damages for a claim that is even ***potentially covered by the policy***. In case you somehow missed the relevant 'duty to defend' provision in the Policy please read: Directors and Officers and Company Coverage Section, F. SETTLEMENT AND DEFENSE 1. *"It shall be the duty of the Insurer and not the duty of the Insureds to defend any Claim. Such duty shall exist even if any of the allegations are groundless, false or fraudulent…"*

To understand the obligation of an insurer who issues a duty to defend policy under Georgia law, I found the following to be very instructive:

*"To determine whether to provide a defense, an insurer is entitled to base its decision on the facts alleged in the complaint giving rise to the claim. However, if the facts alleged in the complaint show no coverage,* **but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage***, the insurer:*

*- Has a duty to conduct a reasonable investigation of the facts presented by its insured.*

Page **2** of **8**

*- Must base its decision of whether to defend the claim or lawsuit on the "true facts" as revealed by its investigation, and not on the facts as alleged in the complaint. (Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671, 268 Ga. 561, 562 (1997).)*

*"The duty to defend arises before litigation is completed, before the insured's liability has been determined."* [1]

**The facts, as alleged in the Lawsuit, clearly support that the Insurer has the duty to defend.** However, if you somehow believe otherwise, the failure by the Insurer to investigate any facts relating to the Lawsuit[2] (after being offered to be provided additional information), and the Insurer's failure to take into account that the Lawsuit, more likely than not, will be amended more than once where the Claims will be further crystalized and could potentially be brought under the coverage of the Policy (if it was not already), is intentional (or grossly negligent) conduct.

Finally, I was stunned by the many incorrect interpretations or inferences relating to the Policy in your letter. Therefore, based on your invitation, the following discussion reflects my understanding of the relevant law and the terms of the Policy as it relates to your three absolute bars to coverage under the Policy. I believe this letter clearly articulates that the Insurer's absolute denial of any potential coverage as set forth in the February 2, 2024 letter is incorrect, in particular as it relates to the Insurers 'duty to defend'. If the Insurer decides to continue to deny its 'duty to defend' obligation based on the "Other Coverage Issues and Defenses" set forth in your letter, or simply disregards the positions espoused in this letter, it does so at its peril.

*First*, you go to great lengths to describe a history relating to the Company that no one knows whether it is true or false. But what is very clear is that most of that history occurred well before Messrs. Blenke, Strickland, and Sevigny were associated with the Parent Company in any capacity. You state that this history alone is a reason to deny coverage as those are the Wrongful Acts or Interrelated Wrongful Acts that must be imputed to the Insureds Claim and are thus barred by Endorsement No. 43.

Your analysis disregards some specific Policy language that is simply not in your favor. Immediately before Section C. of the Directors and Officers and Company Coverage Section is the following language that applies to **all** exclusions set forth in the Policy (including Endorsement No. 43): "(N)o Wrongful Act of one or more Insureds shall be imputed to any other Insureds for the purpose of determining the applicability of any of the above exclusions." Therefore, any of the alleged Wrongful Acts of the Company that you referenced in your letter

---

[1] See https://www.huntonak.com/images/content/6/3/v2/63372/Insurers-Duties-to-Defend-and-Indemnify-Georgia.pdf

[2] Messrs. Blenke, Strickland, and Sevigny only became associated with The Aliera Companies, Inc. in July 2019 and were dismissed in early April 2021 – 8 months before The Aliera Companies. Inc. had an involuntary bankruptcy petition filed against it in Delaware in early December 2021.

as being the Wrongful Acts that allow the Insurer to deny coverage and the duty to defend cannot be attributed or implied to Messrs. Blenke, Strickland, or Sevigny Claims.

I also direct your attention to Section A. INSURING CLAUSES, Subsection 1. of the Directors and Officers and Company Coverage Section which states:

> "1.  The Insurer shall pay the Loss of the Directors and Officers for which the Directors and Officers are not indemnified by the Company and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period or, if elected, the Extended Period, and reported to the Insurer…for any Wrongful Act taking place prior to the end of the Policy Period."

As admitted in your letter, the Claim has been made to the Insurer during the Extended Period that you have stated will terminate on April 24, 2024.  Also, as you accurately note, there are only two causes of actions (or Claims in Policy terms) against Messrs. Blenke, Strickland, and Sevigny.  Those are Counts One and Two of the Lawsuit.  Both Counts have nothing to do with the alleged actions of the Company or the alleged harm that was suffered by creditors as described in the narrative of your letter.

<u>The Claims refer to an alleged breach by the Insureds of their duties as alleged directors of The Aliera Companies, Inc</u>. ("Aliera").  For these Claims to be valid, the actions producing liability must have occurred while the Insureds were alleged to be directors (between July 2019 and April 2021) **and** when Aliera was insolvent[3] (see paragraphs 116 and 126 of the Lawsuit) **and** the Insureds must have been grossly negligent in their responsibilities. What has transpired with the Company as reflected in the Lawsuit is nice storytelling, but it has nothing to do with the Claims.

There has been no fact that was presented in the Lawsuit that is dispositive of when Aliera actually became insolvent other than the reference to the involuntary filing of bankruptcy against Aliera in December 2021.[4]   There is an allegation that Aliera was "insolvent since its inception" (see Paragraph 73 of the Lawsuit) even though there are statements that there were independent audits of Aleira that had unqualified opinions for the years ended 2017 and 2018,

---

[3] In the muddy middle, as corporations move along the spectrum from solvency toward insolvency is the so-called "zone of insolvency".  The Lawsuit alleges that something like that concept exists under Delaware law.  Hoevere, Delaware courts have firmly rejected the assertion that creditors are owed fiduciary duties, whether direct or derivative when a company is in the 'zone of insolvency'. While Delaware cases had advanced *in dicta* the proposition that creditors essentially become the residual owners of the corporation at the point when the corporation first crosses from solvency into the zone of insolvency, the *Gheewalla* and *Quadrant* cases rejected this notion.  See: *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007)*; *Quadrant Structured Products Company, Ltd. v. Vertin*, 115 *A.3d 535 (Del. Ch. May 4, 2015)*.

[4] See footnote No.1 in the Lawsuit.  It appears that on or about December 3, 2021, an involuntary Chapter 11 petition was filed against The Aliera Companies, Inc. ("Aliera") in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") initiating an involuntary chapter 11 case (the "Delaware Bankruptcy Case"). On December 21, 2021, Aliera and four (4) of its wholly owned subsidiaries (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division initiating the Georgia cases (the "Georgia Bankruptcy Cases").
On January 25, 2022, the Delaware Bankruptcy Court entered an Order transferring the venue of the Georgia Bankruptcy Cases to the Delaware Bankruptcy Court. The two cases in which Aliera was the debtor were consolidated pursuant to Fed. R. Bankr. P. 1015(a), with the first-filed Case (No. 21-11548) being the surviving case number. All of the cases have been reassigned to Judge Thomas M. Horan.

and Aleira was solvent based on a balance sheet test (see paragraphs 75 and 76).  The Lawsuit simply implies that these independent audits were flawed based on hindsight 5 plus years later.

As you must be aware, a director is entitled to rely in good faith on company records and on information, opinions, reports, or statements presented to the board by the company's officers or employees, or by other parties as to matters the director reasonably believes are within the parties' professional or expert competence.  Never, during the period when any of the Insureds were associated with the Company did any person (Chief Executive Officer (Shelley Steele), President (Chase Moses), Chief Financial Officer (James Butler), Chief of Staff (Michael Shelnut), Chief Operating Officer (Shantanu Paul), or Chief Compliance Officer (Kathleen Kromodimedjo)) ever state or imply that Aliera was insolvent or in danger of becoming insolvent.

As noted in paragraph 111 of the Lawsuit, "(G)iven that Aliera was formed in Delaware, Delaware law applies …".  <u>The duties of directors under Delaware law (which will be described in more detail below), have been well defined by the courts, and it is absolutely clear that what a company was alleged to have done or not done is not the basis for determining whether there has been a breach of a director's duties.</u>

Under Delaware law, there is <u>no duty by a director to any other party other then the company's shareholders</u> **unless** the company is <u>actually insolvent</u> (regardless whether the company has committed fraud or harmed any person, creditor, member, or even may become insolvent at some point in the future).  With the involuntary bankruptcy filing against Aliera 8 months after the Insureds were dismissed from their association with Aliera, the unqualified audited financial statements of 2017 and 2018, and the regular confirmation from senior leaders that Aliera was financially stable, it would be difficult, if not impossible, for anyone to prove that Aliera was <u>actually insolvent</u> or that the Insureds were grossly negligent in believing Aliera was solvent at the time the Insureds were alleged to be directors or that the Insureds were even aware that a potential insolvency was imminent.[5]

To hold any of the Insureds liable as a director, simply by alleging or proving a history of bad acts by Aliera, will not be sufficient or even relevant to establish liability to the Insureds.  Therefore, the alleged Wrongful Acts or Interrelated Wrongful Acts exclusion you have noted is not applicable because if there is a Wrongful Act by the Insureds, it could only happen after (1) Aliera actually became insolvent (a date which is clearly unknown), and (2) if the alleged director was grossly negligent in the performance of his/her duties (which the facts will show was not the case).  The Wrongful Acts and the Interrelated Wrongful Acts you have described does not determine the liability of the Insureds.

**_Second_**, your letter seems to conclude that because the bankruptcy estate of the Company is involved, the Insurer must be automatically excused from providing coverage, and of course, its duty to defend.  You state that Endorsement No. 26 is so clear that "…the Lawsuit falls squarely

---

[5] Director Fiduciary Duty in Insolvency (harvard.edu)

within the Bankruptcy Insolvency Exclusion such that there is no coverage for the Lawsuit based on the Exclusion."

As you must be aware when one reads a policy, it must read the entire policy.  And terms, conditions and endorsements of a policy cannot be ignored simply because they are not in your favor. Also, you must be aware that any ambiguity will be found to be in favor of the Insureds, not the Insurer.

Endorsement No. 26, upon which you rely, is an **addition** to Section C. EXCLUSIONS, paragraph 1. to the Directors and Officers and Company Coverage Section. It does not replace or modify any other terms and conditions of the Policy like many of the other endorsements to the Policy in fact do.  As noted above, the bankruptcy estate of the Company is a covered entity under the Policy (an Insured) (see: the GENERAL TERMS AND CONDITIONS of the BUSINESS AND MANAGEMENT INDEMNITY POLICY Section B. DEFINITIONS.  Definitions that apply to the Directors and Officers and Company Coverage Section.)  Endorsement No. 26 purports to provide an exclusion to the Insurer if the Claim results, arises from, is in consequence of, or is attributable to the bankruptcy or insolvency of the Company.  As noted above, your letter views Endorsement No. 26 as an absolute shield for the Insurer.

What you fail to consider, acknowledge or reference though is clause v. of sub-section e. of Section C. paragraph 1. of the EXCLUSIONS section of the Directors and Officers and Company Coverage Section.  This clause has not been modified in any way by any of the endorsements to the Policy, including Endorsement No. 26.  The relevant clause clearly and unambiguously states that a Claim will be a covered Claim if it:

> "v. is brought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the Company."

As noted above the Claims here are not the alleged bad acts of the Debtors.  It is the alleged failure of the Insureds to abide by their duty of care and their duty of loyalty to Aliera during the period they allegedly served as directors.  Endorsement No. 26 is not applicable as the party bringing this Claim is the only party that could bring this Claim.  Also, the clear and unambiguous provision noted above must be given consideration and not simply ignored as being meaningless or superfluous to coverage and the Policy.

It cannot be disputed that the alleged Claim belongs to Aliera (and no other entity or person).  As such, the Claim must be <u>enforced by the bankruptcy estate</u> on behalf of Aliera.  <u>Enforcement</u> of a claim by the bankruptcy estate in the name of the Company is not prohibited anywhere in Endorsement No. 26 and is in fact specifically deemed to be a Claim under the Policy.  It is irrational to read the phrase "…or in any way involving the bankruptcy or insolvency of the Company…" as being an amendment to other terms of the Policy (in particular when the Endorsement does not refer to those other terms) or somehow it overrides other clear and unambiguous terms and conditions of the Policy.  Therefore, to conclude that a bankruptcy filing

Page **6** of **8**

fully absolves the Insurer of any liability under the Policy for any Claim brought in the court, or by the trustee that is handling the bankruptcy proceeding, is absurd.

*Lastly*, you assert that Endorsement No. 29 is dispositive because the Lawsuit purports to be an action by creditors.  That is simply not true.  The law is clear.  Claims of this nature (failure of a director with respect to duty of care or the duty of loyalty) **can only be brought by the company** and that does not change because a company becomes insolvent at a later date.  As stated by the Delaware Court of Chancery, "[a]t all times, claims of this kind belong to the corporation itself because even if the improper acts occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly by diminishing the value of the firm and therefore the assets from which the creditors may satisfy their claims."[6]

The Claims alleged against Messrs. Blenke, Strickland, and Sevigny, are not claims from creditors, regardless of the bad drafting of the complaint.  They are the claims of Aliera. To quote from the Harvard publication cited earlier: "Thus, post-insolvency, creditors have a right to bring *derivative* claims, on behalf of the corporation itself, for directors' allegedly not acting in the best interests of *the corporation and all the residual claimants*—**but still have no right to bring *direct* claims, on their own behalf, for directors' allegedly not acting in the best interests of *the creditors***."[7]

**Conclusion:**

It is now up to the Insurer to either (a) continue to breach its duty to defend or (b) to do what the law and Policy requires (that is to step in and assume the defense of the Lawsuit and fully indemnify Messrs. Blenke, Strickland, and Sevigny from all costs, expense and liability, as well as reimburse the Insureds for any and all costs they have incurred, up to the Policy limits with respect to the Lawsuit).

Please be advised that Messrs. Blenke, Strickland, and Sevigny have collectively already incurred approximately $10,000 in damages to retain a law firm to represent their interests in the Lawsuit because of your actions.  **Since you have determined that there can be no coverage under the Policy, unless the Insurer assumes the duty to defend as provided in the Policy within the next 5 business days, the Insureds will take all necessary actions to protect their interests with respect to this matter.**

This letter should not be viewed or considered as any admission of any facts or liability by the Insureds with respect to the Lawsuit, or a waiver of any claims, rights or causes of actions that the Insureds may have against the Insurer under the Policy or at law.

---

[6] *North American Catholic Educational Programming v. Gheewalla* (Del. Supr. 2007)
[7] Director Fiduciary Duty in Insolvency (harvard.edu)

Please be advised that the counsel Messrs. Blenke, Strickland, and Sevigny have retained with respect to this matter is:

Paul O'Grady, Esq.
Peterson, Johnson & Murray, LLC
200 West Adams Street, Suite 2125
Chicago, Illinois 60606
pogrady@pjmlaw.com

 Sincerely,

*John Blenke*
John Blenke

Cc:  Paul O'Grady (pogrady@pjmlaw.com)        Roger Sevigny (sevigny.rogera@gmail.com)
     Ted Strickland (tedstricklandphd@yahoo.com)    Emil Soskin (emil.soskin@nationwide.com)