# BAILEY | CAVALIERI

**DARIUS N. KANDAWALLA**
E dkandawalla@baileycav.com
D 614.229.3255

March 14, 2024

**VIA E-MAIL**

John Blenke
1 Country Aire Drive
St. Louis, MO 63131
jwb8155@icloud.com

    Re:    Insurer:    Scottsdale Insurance Company
               Insured:    The Aliera Companies, Inc.
               Policy No.:    EKS3376033
               Lawsuit:    *Aliera LT, LLC v. John Blenke, et al.*, Adv. Proc. No. 23-05204-JRS, U.S. Bankr. Ct., N.D. of Ga.
               File No.:    02081320

Dear Mr. Blenke:

    On behalf of Scottsdale Insurance Company ("Scottsdale"), we are in receipt of your February 12, 2024 letter, which appears to have been written on behalf of yourself, Theodore Strickland, and Roger Sevigny (collectively, the "Insureds") in response to our February 2, 2024 letters to Messrs. Strickland and Sevigny, in which we provided them with Scottsdale's coverage position with respect to the Lawsuit under the above-referenced Policy.[1]

    While we are directing this letter to you to address the points raised in your February 12th letter, we were recently contacted by the Insureds' defense counsel, Dominick Lanzito of Peterson, Johnson & Murray LLC, who inquired about Scottsdale's coverage position with respect to the Lawsuit. In response, we provided Mr. Lanzito with a copy of our February 2, 2024 coverage letter, as well as a copy of your February 12, 2024 letter, and invited him to provide us with any additional points he may wish to raise on behalf of the Insureds regarding Scottsdale's coverage position. We have not yet heard back from him but did not want to delay our response to your February 12th letter. We have copied Mr. Lanzito on this letter but, if you and the other Insureds would like for us to communicate directly (and solely) with Mr. Lanzito with respect to any coverage-related issues in the future, please let us know.

    In your February 12th letter, you assert that Scottsdale has improperly refused to defend the Insureds in response to the Lawsuit. That is, you suggest that if Scottsdale believes the

---

[1] Terms capitalized but not defined in this letter have the meanings assigned to them in the Policy or in our prior correspondence.

John Blenke
March 14, 2024
Page 2

allegations in the Lawsuit do not support that Scottsdale has a duty to defend, then Scottsdale is required to "investigate any facts relating to the Lawsuit." You then set forth what you contend is the relevant law and terms of the Policy as it relates to the three primary bases for Scottsdale's denial of coverage for the Lawsuit under the Policy.

First, you suggest that Scottsdale has based its coverage position on Wrongful Acts in the Complaint against Aliera, which you contend is improper because the Policy provides that "no Wrongful Act of one or more Insureds shall be imputed to any other Insureds for the purpose of determining the applicability of any of the above exclusions." You further assert that the counts in the Complaint against the Insureds have nothing to do with the alleged actions by the Company or the alleged harm that was suffered by creditors as described in our February 2nd letter. You further contend that the allegations against the Insureds have no merit because it is unclear when Aliera became insolvent.

Second, you assert that Scottsdale's application of the "Bankruptcy Insolvency Exclusion" was improper because Scottsdale was reportedly required to, but did not, take into account the bankruptcy exception to the exclusion set forth in Section C.1.e. of the D&O Coverage Section (the "Insured v. Insured Exclusion"), which you contend requires Scottsdale to provide coverage for a Claim that is bought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the Company. In support of that, you state that "it cannot be disputed that the alleged Claim belongs to Aliera (and no other entity or person)" and therefore "the Claim must be enforced by the bankruptcy estate on behalf of Aliera."

Lastly, relying on Delaware law, you argue that Scottsdale cannot deny coverage for the Lawsuit based on the "Creditor Exclusion" because the nature of the Lawsuit is a claim that can only be brought by the Company. You conclude your letter by stating that unless Scottsdale assumes the duty to defend the Lawsuit within the next five business days, the Insureds will take all necessary actions to protect their interests with respect to this matter.

While Scottsdale has carefully considered the points raised in your February 12th letter, for the reasons previously explained and as further discussed below, Scottsdale maintains that no coverage is available for the Lawsuit under the Policy. The following responds to the primary points raised in your February 12th letter, in turn:

As a general matter, Scottsdale does not disagree with the principles cited in your letter from "Insurer's Duties to Defend and Indemnify: Georgia."[2] That is, Scottsdale recognizes that if the facts alleged in a complaint show that there is no coverage, but the insured notifies the insurer of factual contentions that may place a claim within the scope of coverage, the insurer has a duty to conduct a reasonable investigation of the facts presented by its insured and then base its decision of whether to defend on the "true facts" as revealed by its investigation, and not

---

[2] https://www.huntonak.com/images/content/6/3/v2/63372/Insurers-Duties-to-Defend-and-Indemnify-Georgia.pdf



on the facts as alleged in the complaint.  *See, e.g.*, *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 224 Ga. App. 557, 563 (Ga. Ct. App. 1997), *affirmed Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564 (1997); *see also Lawyers Title Ins. Corp. v. Stribling*, 294 Ga. App. 382, 385-86 (Ga. Ct. App. 2008).  But, those concepts do not apply here because the coverage exclusions that form the basis for Scottsdale's denial of coverage turn on *allegations* alone, the facts *alleged* in the Complaint establish that there is no coverage for the Lawsuit, and the Insureds have not identified (and cannot identify) any factual contentions that could potentially support a contrary conclusion.  *See, e.g. Great American Ins. Co. v. McKemie,* 244 Ga. 84, 85-86 (1979) ("'. . . a distinction must be drawn between groundless suits and actions which, even if successful would not be within the policy coverage.'  A claim based on true facts not within coverage is not groundless within the meaning of the policy, but simply one for which liability insurance is not afforded and which the insurer did not undertake to defend (though the insured may be liable).") (quoting *Loftin v. United States Fire Ins. Co.*, 106 Ga. App. 287, 291 (Ga. Ct. App. 1962)).  Thus, Scottsdale does not have a duty to conduct any investigation beyond its review of the allegations in the Complaint; nor does it have any duty to investigate whether any allegations in the Complaint are ultimately "true facts."  It need only look to the allegations in the Complaint and the plain terms of the Policy—as it properly did here.

The determination of whether a duty to defend exists is made by comparing the facts alleged within the "four corners" of the complaint to the terms contained within the "four corners" of the contract, a principle commonly referred to as the "Eight Corners Rule." *Century Cmtys. of Ga., LLC v. Magnum Contr., LLC*, 2021 Ga. Super. LEXIS 964 (May 13, 2021); *see also City of Atlanta v. St. Paul Fire & Marine Ins.*, 231 Ga. App. 206, 207 (Ga. Ct. App. 1998).  "The duty to defend is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy, even if groundless, the **allegations** of the complaint are looked to to determine whether a liability covered by the policy is **asserted**." *Great McKemie*, *supra* at 85-86 (emphasis added).  The duty to defend is excused when a complaint unambiguously excludes coverage under the policy. *Smith v. Ga. Farm Bureau Mut. Ins. Co.*, 331 Ga. App. 780 (Ga. Ct. App. 2015); *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 424 (Ga. Ct. App. 2003).  Here, when comparing the facts alleged within the four corners of the Complaint to the terms within the four corners of the Policy, coverage is unambiguously excluded for the reasons set forth in our February 2nd letter and as further discussed below.

First, you take issue with Scottsdale allegedly going "to great lengths to describe a history relating to the Company," and suggest that "no one knows whether it is true or false."  But, Scottsdale never suggested that it accepted the allegations in the Complaint as true.  Rather, our coverage letter merely summarized the allegations in the Complaint and, contrary to your suggestion, expressly cautioned that Scottsdale "recognizes that the allegations in the Complaint have not been proven and the following discussion **should not be interpreted as a suggestion that all of those allegations have any legal or factual merit**." (Emphasis added).  Scottsdale's coverage analysis was based on the allegations in the Complaint and the plain terms of the Policy (as required by Georgia law).



John Blenke
March 14, 2024
Page 4

      For instance, the Prior and Interrelated Wrongful Acts Exclusion applies on its face because the Lawsuit is a Claim against the Insureds for Wrongful Acts by the Insureds actually *or allegedly* committed prior to April 21, 2020, or occurring on or subsequent to April 21, 2020 which, together with a Wrongful Act occurring prior to such date, would constitute Interrelated Wrongful Acts. Importantly, the term Wrongful Act is defined in the D&O Coverage Section, in relevant part, as any *actual or alleged* error, omission, misleading statement, misstatement, neglect, breach of duty or act *allegedly committed or attempted by any of the Directors and Officers*, while acting in their capacity as such, or any matter claimed against any Director and Officer solely by reason of his or her serving in such capacity. Thus, the Insureds' alleged breaches of their fiduciary duties as directors of Aliera constitute Wrongful Acts as defined in the Policy. Because those Wrongful Acts allegedly occurred while the Insureds were directors of the Company dating back to July 2019, the Lawsuit is fully precluded from coverage in accordance with the Policy's Prior and Interrelated Wrongful Acts Exclusion. That the Complaint alleges Wrongful Acts by the Insureds does not mean that those allegations are true or that the Insureds are actually liable for any wrongdoing based on those allegations, and Scottsdale has never suggested otherwise.

      Further, contrary to your suggestion, Scottsdale's coverage position has never been based on Wrongful Acts by the Company that Scottsdale has "impute[d]" to the Insureds. Indeed, the Company is not even a defendant in the Lawsuit. Instead, as set forth above, Scottsdale's coverage position is based on the Wrongful Acts alleged against the Insureds themselves. Therefore, the severability/imputation language you cite from the Policy is not relevant here.

      It is also not relevant whether the Trustee has alleged legally viable or meritorious claims against the Insureds. According to your letter, the Trustee's breach of fiduciary duty claims are not valid because it is unclear when Aliera became insolvent. Scottsdale appreciates that the Insureds disagree with the allegations against them in the Complaint, and dispute their potential liability, but Scottsdale's coverage position does not turn on the merits of the Trustee's allegations or the Insureds' defenses to liability. Rather, the Prior and Interrelated Wrongful Acts Exclusions is applicable based on the Trustee's allegations alone, irrespective of whether they are true, false, meritorious, or groundless.

      Second, contrary to your suggestion, Scottsdale has not ignored any Policy provisions in analyzing coverage for the Lawsuit. Scottsdale recognizes that the Insured v. Insured Exclusion includes an exception for a Claim brought or maintained by, among others, a bankruptcy trustee or bankruptcy appointed representative of the Company (the "Bankruptcy Exception"), but that has no bearing on the Bankruptcy Insolvency Exclusion or any other exclusion in the Policy. By its plain terms, the Bankruptcy Exception is an exception to the Insured v. Insured Exclusion that solely applies to the Insured vs. Insured Exclusion. It does not modify or create an exception to any other exclusion in the Policy. In a case involving a similar issue in Georgia, the court held that an exclusion barring claims by receivers and a regulatory exclusion endorsement that capped loss arising out of claims brought by a regulatory or supervisory agency or deposit insurance organization did not conflict. *Davis v. BancInsure, Inc.*, 2013 U.S. Dist. LEXIS 46249, *36



John Blenke
March 14, 2024
Page 5

(N.D. Ga. March 20, 2013). The court reasoned that the receiver exclusion clearly provided that claims brought by receivers were excluded under the policy, and a reasonable person in the position of the insured would understand that provision to mean that claims by the FDIC as receiver were excluded. *Id.* at *38 (*citing Mason v. Allstate Ins. Co.*, 298 Ga. App. 308, 680 S.E.2d 168, 171 (Ga. Ct. App. 2009)). The court noted that there was no inconsistency or ambiguity between the receiver exclusion and the regulatory exclusion, so the policy must be enforced as written. *Id.* (*citing Gill v. B&R Int'l, Inc.*, 234 Ga. App. 528, 507 S.E.2d 477, 480 (Ga. Ct. App. 1998) ("[I]f no ambiguity appears, the trial court enforces the contract according to its terms . . . ."); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 897 (10th Cir. 1995) (where two policy exclusions would bar coverage of a particular claim, the deletion of one of the two exclusions did not bar application of the remaining exclusion where there was no conflict between the two exclusions).

Similarly, the exclusions here do not conflict, are not inconsistent, and are not ambiguous because the Bankruptcy Insolvency Exclusion is broader than Bankruptcy Exception to the Insured v. Insured Exclusion, like the two provisions at issue in the *Davis* case discussed above. Indeed, the Bankruptcy Insolvency Exclusion applies to any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the bankruptcy or insolvency of the Company, including but not limited to: (1) any such claim brought by any creditors, banks, lending institutions or bankruptcy trustee; or (2) any securities holder, direct or derivative suits and/or representative class action suits; whereas the Bankruptcy Exception only creates a narrow exception to the Insured v. Insured Exclusion for a Claim specifically brought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the Company. Moreover, even if there was any arguable conflict between the provisions, the Bankruptcy Exception is part of the policy-form itself and, thus, not unique to this particular Policy issued to Aliera. By contrast, the Bankruptcy Insolvency Exclusion was added to this specific Policy based on the unique risk profile of the Company and for the explicit purpose of excluding coverage for the risks set forth in that Endorsement. *See, e.g.*, *XL Specialty Ins. Co. v. Agoglia*, 2009 U.S. Dist. LEXIS 45787, *9 (S.D.N.Y. May 29, 2009); *Liberty Surplus Ins. Corp. v. Segal Co.*, 142 Fed. Appx. 511, 515 (2d Cir. 2005) ("[W]hen an endorsement 'potentially conflicts' with other provisions of the policy, 'the plain language of the [endorsement] is controlling.'"). Thus, the Bankruptcy Exception to the Insured v. Insured Exclusion does not have any bearing on the Bankruptcy Insolvency Exclusion or its applicability to the Lawsuit here.

Lastly, your arguments that, under Delaware law, directors owe fiduciary duties only to the company when it is actually insolvent and that creditors have no right to bring direct claims against directors may be true, but those arguments pertain to the merits of the claims asserted against the Insureds in the Lawsuit and potential defenses available to the Insureds in response to those claims.[3] Again, Scottsdale's coverage position is not based on whether plaintiffs have

---

[3] While you repeatedly reference Delaware corporate law, Scottsdale does not concede that Delaware law would apply, as the Lawsuit was brought in Georgia and Aliera was headquartered in Georgia.



John Blenke
March 14, 2024
Page 6

pleaded legally viable claims against you and the other Insureds.  The Creditor Exclusion is applicable because the Lawsuit is brought and maintained "on behalf of, in the right of, . . . or for the benefit of" secured and unsecured creditors of the Company.  Whether direct claims can be brought by or on behalf of creditors against corporate directors for breach of fiduciary duty is not relevant because the Lawsuit was brought on behalf of the Company's creditors and that alone is dispositive.

Contrary to your suggestion, Scottsdale has not asserted that the Creditor Exclusion applies because the Lawsuit is an action *by* creditors.  Rather, the Creditor Exclusion applies because the Lawsuit is a Claim **on behalf of** and **for the benefit of** creditors.  Moreover, even if you were correct that the claims asserted by the Trustee are "claims of Aliera," the Trustee brought the Lawsuit against the Insureds **for the benefit of creditors** of Aliera.  To be sure, the Trustee expressly alleges in the Complaint that he was appointed pursuant to an order entered by the Delaware Court [Bankruptcy Case, Docket No. 576] (the "Confirmation Order") confirming the Modified First Amended Plan of Liquidation, attached as Exhibit A to the Confirmation Order (together with all exhibits thereto, and as may be amended, modified or supplemented, the "Plan").  The Plan expressly provides that "the Liquidating Trustee shall have the sole and exclusive authority and standing to commence and prosecute Causes of Action of the Debtors and Estates **for the benefit of Creditors** and/or holders of Trust Beneficial Interest," (Plan, § 8.9) (emphasis added) and "[t]he Liquidating Trustee will act **for the Creditors** in a fiduciary capacity as applicable to a board of directors and shall be responsible for the liquidation of the remaining Assets, administration of this Plan and wind-down of the Debtors and their Estates post-Effective Date, subject to the provisions of this Plan," including "to initiate, continue and prosecute all Causes of Action." (Plan, § 9.1) (emphasis added).  Accordingly, the Lawsuit is a Claim on behalf of and for the benefit of creditors of the Company such that the Creditor Exclusion plainly applies to bar coverage for the Lawsuit.

Based on the foregoing, Scottsdale maintains that the Prior and Interrelated Wrongful Acts Exclusion, the Bankruptcy Insolvency Exclusion, and the Creditor Exclusion each independently applies to fully preclude coverage for the Lawsuit.  Thus, Scottsdale maintains that it does not have any defense or other coverage obligations with respect to the Lawsuit.

\* \* \*

In addition to the foregoing, Scottsdale continues to reserve all of its rights and defenses under the Policy and available at law with respect to this matter, including, without limitation, the right to assert any of the foregoing coverage defenses and to raise additional Policy terms, conditions and defenses as additional facts come to our attention.  Nothing herein shall be construed as a waiver of any rights or defenses that Scottsdale now has or hereafter may have under the Policy or at law. Scottsdale recognizes that the Insureds are similarly reserving their rights.



John Blenke
March 14, 2024
Page 7

If you have any further questions regarding Scottsdale's coverage position or would like to discuss any of this in further detail, please do not hesitate to contact us.

Sincerely,

BAILEY CAVALIERI LLC

Darius N. Kandawalla

cc (via email only):   Emil Soskin (soskine@nationwide.com)
Jordan Ziolkowski (jziolkowski@baileycav.com)
Dominick Lanzito (dlanzito@pjmlaw.com)

**BAILEY | CAVALIERI**