# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE ALIERA COMPANIES, INC. | ) | Case No. 21-11548 (TMH) |
| d/b/a ALIERA HEALTHCARE, INC., *et al.* | ) | |
| | ) | Pending in the U.S. Bankruptcy |
| | ) | Court for the District of Delaware |
| Debtors. | ) | |
| | ) | |
| ALIERA LT, LLC, as Liquidating Trustee of | ) | |
| The Aliera Companies, Inc., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 23-05204 |
| v. | ) | |
| | ) | |
| JOHN BLENKE, THEODORE STRICKLAND, | ) | |
| ROGER SEVIGNY, and JAMES WESTON | ) | |
| QUINTRELL, | ) | |
| Defendants. | ) | |
| | ) | |
| JOHN BLENKE, THEODORE STRICKLAND | ) | |
| and ROGER SEVIGNY, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | Adversary Proceeding No. 23-05204 |
| | ) | |
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## THIRD PARTY PLAINTIFFS' RESPONSE TO SCOTTSDALE INSURANCE COMPANY'S MOTION TO DISMISS

NOW COME Defendants/Third-Party Plaintiffs John Blenke ("**Blenke**"), Theodore

Strickland ("**Strickland**"), and Roger Sevigny ("**Sevigny**"), by and through their counsel

Peterson, Johnson & Murray LLC and Rountree Leitman Klein & Geer, LLC, and for their

Response to Third-Party Defendant's Federal Rule of Civil Procedure 12(b)(6) Motion to

Dismiss, respectfully show the Court as follows:

1

## **INTRODUCTION**

The Business and Management Indemnity Policy—and its Directors and Officers and Company Coverage Section (D&O&C)—at issue carefully drew distinctions between "directors" and the nonbinding nature of "advisory board members." Doc. 15-1, D&O&C, at p. 21(B)(4); p. 86, Endors. 48. Those distinctive categories, however, led to the applicability of certain parts of the Policy and the inapplicability of others. A plaintiff's factual assertions are given due regard at the pleading's stage. But Third-party Defendant fails to address well-pled facts in this Third-party Complaint—namely that Plaintiffs were "advisory board members" and not "Directors and Officers." Doc. 15 ¶¶ 1-2, 21, 25, 35. That is not a distinction without a difference, and the distinction removes such members from the exclusions applicable to Directors and Officers. Accordingly, under these facts, the Policy's construction triggered the clause, stating: "[i]t shall be the duty of the Insurer and not the duty of the Insureds to defend any Claim. Such duty shall exist even if any of the allegations are groundless, false or fraudulent." Doc. 15-1 at 26, D&O&C (F)(1).

But Scottsdale Insurance Company simply ignores the parts of the Third-party Complaint which pose an insurmountable obstacle to the relief it seeks. Those parts, however, take the Third-party Complaint well beyond a plausible, speculative level—which thwarts Scottsdale's Motion. Unlike Scottsdale's explanation, moreover, the Third-party Plaintiffs' interpretation is grounded in the Policy text, bringing it well within that realm of plausibility. The textual basis underlying the Third-party Complaint also provides more than a mere arguable basis for Scottsdale to defend and indemnify. Consequently, Scottsdale remains dutybound to do so at this juncture—as a matter of Policy interpretation and Georgia law. Accordingly, judgment for Scottsdale is inapplicable and

2

inappropriate at this stage because Scottsdale's arguments are incompatible with Rule 12(b)(6) and discordant with the text of the Policy itself.

## STANDARD OF REVIEW

When ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). The threshold at this juncture, is such that Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). For that reason, a "court reviewing a motion to dismiss must keep in mind that a motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case" at this embryonic stage. *Moore v. McCalla Raymer, LLC*, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013) (quoting *Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) and *Milburn v. U.S.*, 734 F.2d 762, 765 (11th Cir.1984)).

## ARGUMENT

**I.    Especially unfittingly at this juncture, Scottsdale conflates critical textually-based differences to purport there is no ambiguity.**

Scottsdale argues there is "no coverage is available for the Underlying Claim under the Policy," and buttresses that conclusory position with the Trustee's Complaint, in which "the Trustee alleges that the Third-Party Plaintiffs served as directors of Aliera." Doc. 23 at 3,6. The crux of Scottsdale's argument is that the policy purportedly "fully precludes" coverage of any claim tangentially related to "Wrongful Acts," real or not, of "Directors and Officers." *Id.* at 3, 5, 15-17. But at this juncture, Scottsdale's argument critically disregards two significant documents, which it cannot—the Third-party Complaint and the Policy itself.

3

The Third-party Complaint at issue sought declaratory relief regarding Scottsdale's duties and obligations to indemnify and defend them as members of an advisory board under The Aliera Companies, Inc., having become involved in August 2019 Doc. 15 ¶¶ 1-2. The policy's effectiveness stemmed from April 21, 2019 to April 21, 2022. *Id.* ¶ 3.

### a. Third-party plaintiffs are not "Directors and Officers" under the Policy, and Scottsdale's arguments otherwise create an ambiguity precluding its dismissal.

Scottsdale's motion disregards the allegations in the Third-party Complaint. Insurmountable for Scottsdale at this juncture, the Third-party Plaintiffs were not directors. The well-pled allegations are such that the Third-party Plaintiffs served as advisory board members to Alliera and were specifically not excepted from coverage under the Policy's Settlement and Defense provision. Doc. 15 ¶¶ 1-2, 21,25 35. Scottsdale carefully includes certain definitions of terms from its policy but curiously omits others. And to meet burdens it otherwise cannot, Scottsdale comparatively runs roughshod over what actually constitutes an "Insured" and "Directors and Officers," according to the Policy. Doc. 23 at 5-6. Rather, pursuant to the Policy itself, "Insured" included "the Company and the Directors and Officers." Doc. at 21, D&O&C (B)(4-5). And in pertinent part, the Policy provided that "Terms . . . not defined in [the] Definitions subsection" bore "the meanings ascribed to them in those Coverage Sections." *Id.* at 7 (B)(2).

The definitions of "Wrongful Acts," upon which Scottsdale relies, turn critically upon whether the conduct arose from "Directors and Officers, while acting in their capacity" as such. Doc. 15-1 at 21 (D&O&C Coverage at (B)(9)(a-c)). But "Directors and Officers," included only (a) "duly elected or appointed director, officer or similar executive of the Company" its "management board," (b) employees of the Company, and (c) the director and officer equivalent of any non-American related business entity. *Id.* at 21. Relevant to this Third-party Complaint, that definition did include natural persons who were members of a "Scientific or Advisory Board of

4

the Company . . . *that is indemnified by the Company pursuant to a written indemnification agreement*" that indemnified for any "threatened, pending or contemplated actions" with no regard to the members' financial abilities. *Id.* at 86, Endorsement No. 48. Scottsdale argues, nevertheless, that these advisory board members are actually "directors" and fall under the "Directors and Officers" category.

It is the text of the Policy that provides intent behind the terms employed therein. *See Auto-Owners Ins. Co. v. Hale Haven Properties, LLC*, 346 Ga. App. 39, 43 (2018) ("Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent."); *see also James v. Pennsylvania Gen. Ins. Co.*, 167 Ga. App. 427, 430 (1983) ("An insurance policy is a contract . . . intention of the parties must be sought for in accordance with the true meaning and spirit in which the agreement was made and expressed in the written instrument, and the ordinary and legal meaning of the words employed must be taken into consideration."). This Policy clearly and unambiguously intended there is a specific difference for members of scientific and advisory boards, and more so for those indemnified by a written indemnification agreement—and different than "elected or appointed director, officer, or similar executive . . . or any member of the management board." Doc. 15-1 at 21 (B)(4)(a). Accordingly, the Policy intentionally only incorporated certain advisory board members, who were "indemnified . . . pursuant to a written indemnification agreement" into its all-encompassing Policy definition of "Directors and Officers." *Id.*

Therefore, a proper construction of the Policy shows that the Third-party Plaintiffs were not "Directors and Officers" and were not among the advisory board members incorporated into "Directors and Officers" (and were plainly not directors or officers). Therefore, Scottsdale cannot

5

invoke the discrete "Wrongful Acts" exceptions premised upon the underlying definitions. Rather, the Third-party Plaintiffs remain within the definition of "Insured." Thus, Section F's "Settlement and Defense" provision governs. It states:

> It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any Claim shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses**.

Doc. 15-1, at p. 26, D&O&C (F)(1). Scottsdale argues that "it does not matter for purposes of the [Directors & Officers] exclusion whether the Third-Party Plaintiffs actually committed any wrongdoing" or "are ever found liable." Doc. 23 at 15. By the text of the Policy, however, Scottsdale is duty-bound to defend any claim against the Third-party Plaintiffs "even if any of the allegations are groundless, false or fraudulent," such is the case here with the Trustee's Complaint.

### b. *Third-party plaintiffs are not "Directors and Officers" under the policy, and Scottsdale's arguments otherwise create an ambiguity precluding dismissal.*

Scottsdale's position is that regardless of accuracy of the allegations in the Trustee's complaint, "the Trustee alleges that the Third-Party Plaintiffs served as directors of Aliera," and as decision-making "directors . . . assisted the Debtors in perpetuating [a] scheme . . . ." Doc. 23 at 6. But it is *this* complaint and its facts with which Scottsdale must grapple. Scottsdale makes no substantial attempt to address the allegations that are the subject of its Rule 12(b)(6) Motion.

At this juncture, however, Scottsdale now seeks to rewrite its policy to shoehorn the Third-party Plaintiffs into latent purported exceptions for a category to which it cannot belong. *See Cont'l Cas. Co. v. Winder Laboratories, LLC*, 73 F.4th 934, 941 (11th Cir. 2023) ("Under Georgia law, an unambiguous contract 'must be enforced as written,' and we should not expand 'the rights of the parties to an insurance policy . . . beyond the terms of the policy.'") (quoting *Giddens v.*

6

*Equitable Life Assurance Soc'y of the U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006)). Here, for advisory board members who were *not* indemnified in writing by the Company, there was either a purposeful intent for advisory members to be generally insured, or there is an ambiguous limbo at issue. Either way, it is measured against Scottsdale. *See Lee v. Universal Underwriters Ins. Co.*, 642 F. App'x 969, 972–73 (11th Cir. 2016) ("After deciding that an insurance policy is ambiguous, the Georgia Supreme Court will typically construe the policy against the insurer before applying any other rule of construction.").

"Under Georgia law, 'a specific provision will prevail over a general one.'" *Associated Indus. Ins. Co. v. A&B Apartments, LLC*, 1:19-CV-00668, 2019 WL 13061885, at **2-3 (N.D. Ga. Dec. 26, 2019) (quoting *Martin v. Mass. Mut. Life Ins. Co.*, 686 F. App'x 639, 643 (11th Cir. 2017) (citing *Holland v. Holland*, 700 S.E.2d 573, 575 (Ga. 2010)). This policy's specific provisions demonstrate two things: (1) that Third-party plaintiffs were not "Officers and Directors" and (2) that members of an "advisory board" are a distinctly different class who only fall under the exception *if* they are indemnified in a written policy. It defies the text of the policy for Scottsdale to purport theoretically speaking they are somehow actually "directors," and it asks this Court to read in language that is not otherwise present.

Scottsdale aptly notes that where an insurance policy is "unambiguous" and has only "one reasonable construction is possible, the court must enforce the contract as written." *Johnston v. Executive Risk Indem., Inc.*, 1:05-CV-2826-CAP, 2007 WL 9701322, at *5 (N.D. Ga. Oct. 1, 2007); *Owners Ins. Co. v. Sidener*, 649 F. Supp. 3d 1321, 1330 (M.D. Ga. 2022) (citing *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371-72 (2004)). But hoist in its own petard, Scottsdale's arguing something counter to the allegations of the Third-party Complaint tacitly concedes there is not merely "one reasonable construction." *Id.* Rather, according to *Sidener*, ambiguity exists

7

wherever a policy's words and phrases bear "uncertain meaning and may be fairly understood in more ways than one." *Sidener*, 649 F. Supp. 3d at 1330 (citing *N. Metro Directories Publ'g, LLC v. Cotton States Mut. Ins. Co.*, 279 Ga. App. 492, 494 (2006) and *Federated Mut. Ins. Co. v. Ownbey Enters., Inc.*, 278 Ga. App. 1, 5 (2006)). Consequently, Scottsdale's motion to dismiss must be denied on that basis alone.

Notwithstanding plain meaning of the words underlying the policy, *one reasonable construction* of the policy at issue suggests that "advisory board members" were explicitly different than "directors and officers." The Third-party Plaintiffs have adequately pled their status as advisory board members, which is taken as true, at this juncture and earnestly raises their right to relief above the speculative level. *Twombly*, 550 U.S. at 545. Scottsdale purports something critically different (and, ostensibly, Scottsdale believes its interpretation to be reasonable too). That is inappropriate to resolve at the Rule 12(b)(6) stage.

"It is not proper on a motion to dismiss to read out such contractual language when a party proffers an interpretation reasonably giving import to that language." *See BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 Fed. Appx. 521, 524 (11th Cir. 2017) ("There is at least ambiguity on this point, and that alone is sufficient to render discovery into extrinsic evidence essential before the contract can be definitively interpreted." (citing *Geter v. Galardi S. Enters., Inc.*, 43 F.Supp.3d 1322, 1328 (S.D. Fla. 2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.") *John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 Fed. Appx. 396, 398 (11th Cir. 2011) (per curiam) (applying Florida law); *Davis v. BancInsure, Inc*., No. 3:12-CV-113-TCB, 2013 WL 1223696, at *3 (N.D. Ga. Mar. 20, 2013) (applying Georgia law)).

> **II.  Even an interpretation most favorable to Scottsdale still suggests there is an ambiguity that arguably brings the occurrence alleged against these advisory board members within the policy's coverage and triggers the duty to defend.**

Scottsdale cites *Cont'l Cas. Co. v. Winder Laboratories, LLC*, 73 F.4th 934 (11th Cir. 2023) ostensibly in support of the proposition that it is justified in its position to refuse to defend the Third-party Plaintiffs. Doc. 23 at 12. But there, Eleventh Circuit cautioned that "[i]f the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Id.* at 942. (emphasis added)). *Sidener*, which Scottsdale also cites, is also clear that "[w]here the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured. *Sidener*, 649 F. Supp. 3d at 1331 (quoting *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997)).

Under Georgia law, "an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." *See Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) (Even where a claim may only be potentially covered, "any doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured."). Rather, it is *only* where a complaint "does not assert any claims upon which there [c]ould be insurance coverage" that "the insurer is justified in refusing to defend" the insured. *Winder Laboratories, LLC*, 73 F.4th at 942 (citing *S. Tr. Ins. Co. v. Mountain Express Oil Co.*, 351 Ga. App. 117 (2019); *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206 (1998)). However, that is not the case here. Rather, as discrete advisory board members, there remains more than a mere arguable basis for coverage. The conspicuousness of this is evinced by Scottsdale's omissions in its motion—ignoring Third-party Plaintiff's Complaint and contradictorily arguing they are "Directors and Officers." Those contradictions are resolved in the insured's favor. *Winder Laboratories, LLC*, 73 F.4th at 942.

9

Scottsdale cites *Johnston v. Exec. Risk. Indem*. for the proposition that within the bounds of law an insurance company is "free to fix the terms of its policies" in any legal manner that it sees fit and vaguely asserts without analysis that the *Johnston* Court rejected a narrow reading of exclusionary language. Doc. 23 at 10, 14. *Johnston*, however, illustrates a great contrast to this case, demonstrating the exhaustive limits of where a plaintiff's interpretation must be rejected. With sheer distinguishability, *Johnston*'s plaintiff actually was "an officer" and that policy actually defined "Insured Person" to include "officer[s]." *Johnston*, 1:05-CV-2826-CAP, 2007 WL 9701322, *1. But more critically, there also was a coverage exception applicable to that plaintiff for "any prior and/or pending litigation." *Id.* However, like Scottsdale's wishful thinking, that plaintiff tried to impose into the policy additional content which was not there—arguing that the "prior/pending litigation exclusion" was ambiguous: unless one assumed that litigation did not form a basis to exclude coverage; unless litigation specifically "g[ave] the insured notice of similar or related claims that might be brought against it;" because lawsuits alone purportedly did not trigger notice for the insured, and it was "nonsensical" to purport otherwise; and because "the most reasonable reading of the prior/pending litigation exclusion" was only "where the lawsuit is brought against the insured." *Id.* at *6. But the court rejected that plaintiff's tenuous nontextual surplusage, ruling as a matter of law, "[t]here [wa]s nothing . . . in the language of . . . the policy itself, to reasonably support the plaintiff's narrow reading of the" exclusion, and such an interpretation was not "reasonable" in light of the text. *See id.* ("The plaintiff is asking this court to read additional terms into the prior/pending litigation exclusion that are simply not supported by the plain meaning of the language of the clause."). Here, distinguishably from *Johnston*, all of the Third-party Plaintiffs' arguments are supported by the text of the policy itself that whether

10

taken separate or as a whole supports its position—in contrast to Scottsdale's cherry-picked language in its motion.

Scottsdale also argues that a broad interpretation of its language is proper based on *Associated Indus. Ins. Co. v. A&B Apts.* Doc. 23 at 13. There, however, while the policy covered "bodily injury" caused by "occurrence[s]," it specifically excluded any suit "arising from . . . firearms," but such was the case. *Associated Indus. Ins. Co. v. A&B Apartments, LLC*, 1:19-CV-00668, 2019 WL 13061885, at *1 (N.D. Ga. Dec. 26, 2019). Furthermore, because there were no material facts in dispute, the court found that the firearm exclusion was dispositive to liability because the phrase unambiguously excepted occurrences involving firearms. Distinguishably, however, Scottsdale, disputes material facts in the Third-party Complaint.

### III.    Scottsdale bears an unshirkable duty to defend the Third-party Plaintiffs.

The duty to defend is an active and dynamic principle of law—which is not static—but, rather, continually subject to the Court's judgment. Insurers "[a]re under a duty to defend until the district court rule[s] that they [a]re not." *See Winder Laboratories, LLC*, 73 F.4th at 944–45 ("conclud[ing] that the insurers *no longer* have a duty to defend . . . but that does not mean that the insurers *never had* a duty to defend at earlier stages of the case. Rather, because insurers under Georgia law have a broad duty to defend when there is 'even arguably' a covered claim . . . the insurers had an active duty to defend *up until the point* when the district court ruled otherwise.") (quoting *St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. at 207).

An "insurer's duty is both to defend actions and to pay judgment against the insured." *Anderson v. U.S. Fid. & Guar. Co.*, 177 Ga. App. 520, 521 (1986). But an insurer's duty to pay and its duty to defend are separate and independent obligations. *Fang v. Hei Investments, LLC*, 2016 Ga. Super. LEXIS 4619, *7. Moreover, "[w]hether an insurer has a duty to defend depends on the language

11

of the policy as compared with the allegations of the complaint," but "[i]f the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Id.* at 408 (quoting *Penn Am. Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. 564, 565 (1997) and *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407-08 (2012)).

"[T]he majority of jurisdictions require an insurer to consider true but unpleaded facts when it is determining its duty to defend an insured against a claim," and the "insurer must look at not only the allegations of the complaint but also consider any extrinsic facts of which it is aware when determining whether it owes a duty to defend." *Martin v. Triple A Auto Servs.*, 2016 Ga. Super. LEXIS 4332, **7-8. Accordingly, if those "true but impleaded facts establish that the claim against the insured" even arguably or "potentially falls within the scope of coverage under the policy, the insurer owes a duty to defend." *Id.* at *8; *Fang* 2016 Ga. Super. LEXIS 4619, at *7 ("If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." (quoting *Landmark Am. Ins. Co. v. Khan*, 307 Ga. App. 609, 612, 705 S.E.2d 707 (2011)); *Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 2015 Ga. Super. LEXIS 8538, *6.

But an insurer is not powerless. An insurer—while duty-bound to defend—"is not estopped to raise policy defenses," and "when the insurer breaches the contract by wrongfully refusing to provide a defense, the insured is entitled to receive only what it is owed under the contract—the cost of defense." *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671*, 268 Ga. 561, 562 (1997). That is precisely the case before this Court. Nevertheless, "an insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, 'waives the provisions of the policy against a settlement by the insured and becomes bound to pay the amount of any

12

settlement within a policy's limits made in good faith, plus expenses and attorneys' fees.'" S. Guar. Ins. Co. v. Dowse, 278 Ga. 674, 676 (2004) (citing *Ga. Southern &c. R. Co. v. United States Cas. Co.*, 97 Ga. App. 242, 244 (1958); *Motors Ins. Co. v. Auto–Owners Ins. Co.*, 251 Ga. App. 661, 664 (2001); *Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co.*, 212 Ga. App. 642, 646 (1994); see 22 HOLMES' APPLEMAN ON INSURANCE 2d, § 137.10(C)(1), p. 194). Accordingly, Scottsdale's duties are active.

### IV. The Policy's Bankruptcy and Creditors Exclusions are unenforceable due to the preclusive effect of the Bankruptcy Code and Scottsdale's unperformed duties.

Scottsdale, albeit reduced to one footnote in its motion argues that coverage is precluded by way of the "Bankruptcy Exclusion" and the "Creditors Exclusion," cautioning that its "motion does not address either of those exclusions" but "will address those . . . if necessary." Doc. 23 at 11, n.4. Presuming this sufficiently raised the matter before the Court—which the Third-party Plaintiffs do not otherwise concede—that too fails for its unenforceable nature of the provisions in this case, under the Bankruptcy Code.

The Policy states that the "Insurer shall not be liable for Loss under this Coverage Section on account of any Claim alleging . . . or in any way involving the bankruptcy or insolvency of the Company, including . . . i. any such claim brought by any creditors, banks, lending institutions or bankruptcy trustee; or ii. any securities holder, direct or derivative suits and/or representative class action suits." Doc. 15-1 at 60, Endors. No. 26. This is known as an "*ipso facto* clause – i.e. a provision in an executory contract that provides for termination or modification based on the filing of a bankruptcy petition or the financial condition of the debtor. Such clauses are prohibited under the Bankruptcy Code." *See In re Cmty. Mem'l Hosp.*, 16-CV-14434, 2019 WL 3296994, at *2 (E.D. Mich. July 23, 2019) (noting "the ipso facto prohibition may be triggered even if the challenged prohibition invalidates only part of a contract, and not the entire contract") (citing 11

13

U.S.C. § 365(e)(1)). Likewise, the Creditor Exception provides it triggers for any Claim levied by a creditor. *Id.* at 63, Endors. No. 29. For both provisions, however, "[a]ll other terms and conditions of this Policy remain unchanged." *Id.* at 60, 63.

The Bankruptcy Code has two relevant provisions: First, Section 541(c) serves to invalidate contracts that limit the transfer of a debtor's interest and those that hinge upon the debtor's bankruptcy. In relevant part, Section 541(c) provides that: "an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in an agreement . . . or applicable nonbankruptcy law," where such provision, "is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c). Section 365(e)(1) provides that "[n]otwithstanding a provision in an executory contract," it "may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—(A) the insolvency or financial condition of the debtor at any time before the closing of the case; (B) the commencement of a case under this title; or (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement." 11 U.S.C. § 365(e)(1). Section 365's reference to "'executory contract' is a term the Bankruptcy Act does not define, but which courts have." *See Cmty. Mem'l Hosp.*, 16-CV-14434, 2019 WL 3296994, at *3 (citing *e.g., Matter of B. Siegel Co.*, 51 B.R. 159, 161 (Bankr. E.D. Mich. 1985) (citing *Executory Contracts in Bankruptcy, Part 1*, 57 Minn. L. Rev. 439, 460 (1973)) ("defining an executory contract as a contract 'under which the obligation of

14

both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other'").

As it pertains to this case, the duties of Insurer and the Insured related to Settlement and Defense remained unchanged by those exclusions and remain unperformed. Therefore, by way of that provision, "[i]t shall be the duty of the Insurer and not the duty of the Insureds to defend any Claim . . . [which] shall cease when the Limits of Liability have been exhausted by the payment of Loss including Costs, Charges, and Expenses," and "[t]he Insureds agree to provide the Insurer with all information, assistance and cooperation which the insurer reasonably requests that, in the event of a Claim, the Insureds will do nothing that shall prejudice the position of the Insurer or its potential or actual rights of recovery." Doc. 15-1, (F)(1, 4).

In *In re Cmty. Mem'l Hosp.*, the district court affirmed the finding of the bankruptcy court that the Bankruptcy Code's prohibitions of ipso facto provisions applied. *Cmty. Mem'l Hosp.*, No. 16-CV-14434, 2019 WL 3296994 at *1. Community Memorial Hospital filed for bankruptcy while it had a Directors & Officers Policy that had been renewed after filing its petition. *Id.* The hospital's rights were assigned to a trust that then filed suit against the former Directors and Officers—alleging breach of fiduciary duty and negligence. *Id.* The Directors and Officers policy contained a "bankruptcy/ insolvency/ creditors exclusion" for anything related to wrongful acts leading to "bankruptcy or insolvency of the Organization," a determination thereof, or a petition "pursuant to the federal Bankruptcy Code or any similar state law, or the Organization assigning its assets for the benefits of its creditors." *Id.* at **1–2. On that basis, the insurer denied coverage, and the Trust sought a declaratory judgment, arguing unenforceability of the clause, due to Section 365(e). *Id.* at *2.

15

The court, however, reasoned that this was a prohibited *ipso facto* clause that impermissibly sought to limit an executory contract. *Id.* at *3. Accordingly, the insurance company's "declination of coverage impeded an executory contract, in violation of the Bankruptcy Code's prohibition on enforcement of ipso facto provisions." *Id.* at *5. Similarly, here, Scottsdale's declination of coverage premised upon this the Bankruptcy and Insolvency Exclusion impedes both its unperformed duty to defend Third-party Plaintiffs and impeded Third-party Plaintiffs' unperformed duties to assist and cooperate. Thus, this constitutes an executory contract.

In *Butner v. United States*, 440 U.S. 48 (1979), the U.S. Supreme Court directed that property interests are created and defined by state law. *Id.* at 55. While the Bankruptcy Code generally supersedes state law, the Court has affirmed that proposition in *Butner*, explaining that "[i]n the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). Accordingly, under Georgia law, a beneficiary to an insurance contract has a well-settled cognizable property interest in that insurance contract. *See Rouse v. Crum*, 169 Ga. App. 439, 441 (1984) ("A named beneficiary to a life insurance policy has some property interest in that contract of insurance; such a third party beneficiary to the insurance contract would have, for example, the right to insist upon strict adherence to the policy's terms concerning changing of beneficiary, and would generally have the right to pay the premiums to keep the contract in force.") (citing *Cason v. Owens*, 100 Ga. 142 (1896) (noting, at that time, "the Supreme Court concluded that the children of the deceased were proper parties to bring suit against their mother for allegedly exerting undue influence in persuading their deceased father to delete them as beneficiary of an insurance policy . . . .").

16

Therefore, Scottsdale's unperformed duties remained continuous and unchanged at all relevant times. Scottsdale's wrongful refusal to perform its duties cannot be avoided through these provisions. As pursuant to the Policy, further performance remained due on both sides at the time the underlying Petition was filed. The Third-party Plaintiffs, having given notice to Scottsdale, satisfied any conceivable condition precedent to completely trigger Scottsdale's duties to defend it, and thereby, fully vesting the Policy-based property interest. This, thus, precludes Scottsdale from using the Bankruptcy Insolvency Exclusions or the Creditor Exclusion—as clauses that automatically terminates the Policy—to circumvent the performance of its obligations.

## CONCLUSION

For the forgoing reasons, Third-Party Plaintiffs John Blenke, Theodore Strickland, and Roger Sevigny, respectfully request that the Court deny Third-Party Defendant's Motion to Dismiss and grant such other relief as this Court deems appropriate.

This 14th day of June 2024.

    Respectfully submitted,

    **PETERSON, JOHNSON & MURRAY, LLC**

    */s/ Dominick L. Lanzito*
Dominick L. Lanzito
200 W. Adams St., Suite 2125
Chicago, IL 60606
T: (312) 724-8035
dlanzito@pjmlaw.com
Attorneys for John Blenke, Theodore Strickland, and Roger Sevigny
***Admitted Pro Hac Vice***

17

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Ceci Christy*
Ceci Christy
Georgia Bar No. 370092
Century Plaza I
2987 Clairmont Rd., Ste. 350
Atlanta, Georgia 30329
T: (404) 584-1244
cchristy@rlkglaw.com
Attorneys for John Blenke, Theodore Strickland, and Roger Sevigny
***Local Counsel***

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE ALIERA COMPANIES, INC. | ) | Case No. 21-11548 (TMH) |
| d/b/a ALIERA HEALTHCARE, INC., *et al.* | ) | |
| | ) | Pending in the U.S. Bankruptcy |
| | ) | Court for the District of Delaware |
| Debtors. | ) | |
| | ) | |
| ALIERA LT, LLC, as Liquidating Trustee of The Aliera Companies, Inc., *et al.*, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 23-05204 |
| v. | ) | |
| | ) | |
| JOHN BLENKE, THEODORE STRICKLAND, ROGER SEVIGNY, and JAMES WESTON QUINTRELL | ) ) ) | |
| Defendants. | ) | |
| | ) | |
| JOHN BLENKE, THEODORE STRICKLAND and ROGER SEVIGNY, | ) ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | Adversary Proceeding No. 23-05204 |
| | ) | |
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2024, I filed the foregoing pleading using the Court's CM/ECF system, which generates an electronic notice thereof to all parties registered to receive notices thereby and to the following parties at the address listed below:

 John Elrod
 elrodj@gtlaw.com
 Allison Jane McGregor

Allison.mcgregor@gtlaw.com
Brian Goldberg
Brian.Goldberg@fmglaw.com

Dated: June 14, 2024          ROUNTREE LEITMAN KLEIN & GEER, LLC

/s/ *Ceci Christy*_____
Ceci Christy, Georgia Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com